2016, 1075, Mr. Marr. Good morning, Your Honor. We would like to reserve three minutes for rebuttal as well. My name is Eugene Marr, and I represent the appellant, Adobe Systems, Inc. Your Honor, in Commel v. Cisco, the Supreme Court explained that the district courts have the authority and responsibility to ensure that frivolous cases are dissuaded. And then in Octane Fitness, the Supreme Court instructed that the exceptional case determination under Section 285 is one where you look at the substantive strength of a party's litigating position and the unreasonableness in which the manner of the case was litigated. Now, here is where the district court erred. It failed to properly evaluate the strength or the lack thereof of Plaintiff Blue Spike's patent infringement case. But the court made a lot of disparaging comments about the way the case was tried. She suggested that there was bad faith. It was the antithesis of being diligent. Jurisdiction in the Eastern District was sort of fabricated. And the only justification that she seemed to find seems a bit shaky. And so, yes, there's – so there was a lot here that justifies reversal. Yes, Your Honor, we do fully agree with that. We recognize in looking at the fees order from the district court that it did not go back and take a look at some five different findings that the court just articulated in the district court's previous orders, identifying conduct that is unreasonable in the litigation. Wait a minute. Why do you say that? How do you know that the court didn't take a look at the totality of the circumstances? Your Honor, the only comment we see in the fees order, and granted the discussion section is only one page long, is a comment about the conduct being less than ideal. The less than ideal evokes just a memory of plaintiff's counsel having some conduct that wasn't perfect in the district court's eyes. But we've always assumed that the district court considers all the relevant factors in the absence of a clear indication that they haven't, right? Your Honor, I think this court's guidance, actually, in the Adjusticam case is important. While this court has articulated a district court doesn't have to provide and describe every single assessment it does. It does actually have to establish it did look at this under a totality of the circumstances. Now, we do have a situation where we think on the conduct side, the district court didn't go back and look at all of the orders it previously issued about their conduct. Well, but the district court had already sanctioned Booth by dismissing the claims with prejudice. I mean, that's a big sanction, is it not? And isn't the district court allowed to factor that into its determination? Absolutely, and we don't believe the district court factored all of that in. It is an important sanction. What do you mean she didn't factor it in? She pointed out that she had dismissed their infringement contentions with prejudice. Yes, Your Honor, and that was a result, though, actually, of the deficiency in the technical side of their case. Before the magistrate court on the Adobe's motion to strike, the magistrate judge found that their evidence was not able to even establish the notice function of where every limitation of every claim is found. That deficiency is actually what led to their case being struck and dismissed with prejudice, as opposed to their litigation conduct. And that's actually one of the issues that we see missing in the fees order, and if you look at the guidance that this court has provided, particularly in Rothschild and Adjusticam, the district court has to look at the single issue that helped dispose of the case, analyze the weakness of the infringing position that was brought by the plaintiff, Blue Spike. And magistrate judge Corley, in her order, analyzed this and said, the evidence you brought forth to provide even a notice function fails. Your exhibits that you rely on don't even refer to the accused products. You don't have a basis for accusing any of these products. The magistrate court also found... But normally, if all of that was true, the dismissal would still be without prejudice, correct? So there is a sanction that is involved in the dismissal with prejudice, so that she punished them for all of that conduct in a very serious way. Yes, Your Honor. The district court certainly did, and they also looked at, in addition to that, obviously the length of the litigation, as well as the amount of motions practiced that the district court felt the plaintiff forced the defendant to engage upon. Yet, the sanction of just entering judgment with prejudice doesn't accomplish the function that the Supreme Court has established here. And that's when you have a plaintiff who brings a case which has now been established that has no technical merit out of the gate. Section 285 is established to help deter that behavior. Blue Spike here has filed over 100 such cases. But when you say it had no merit out of the gate, there was an absence of allegations, which was the predicate for the dismissal. What I find difficult here is the notion that you would say the district court, when it dismisses things early based on the absence of allegations, has then an obligation to go back and essentially try the case, to essentially do claim construction, infringement analysis, all of that, even though she did the dismissal up front. So that's part of my problem is that you're asking the district court to engage in something that she short cut by saying the allegations weren't adequate. Your Honor, to be clear, we don't believe the district court needed to engage in a claim construction in the fees context or reanalyze the infringement or non-infringement side of the case. What we thought the district court should have done and failed to do, and as the court has instructed in Adjusticam and in Rothschild, is go back and look at what was the single issue that disposed of the case. What made the case dispositive? And that was actually the lack of allegations, the lack of factual evidence, to even provide that notice function. We have a lack of adequate pre-filing investigation. So lack of allegations is what led to the dismissal. Yes. The behavior that dragged out the case is what led to the dismissal of prejudice. The behavior certainly helped lead to the dismissal of prejudice, as well as actually the arguments raised at the hearing before the magistrate judge. Magistrate Judge Corley determined that a number of questions that she posed and asking about their basis for their direct infringement contentions, their doctrine of equivalence assertions, willful infringement, indirect infringement, all lacked any basis whatsoever. So the magistrate judge actually struck all of those with prejudice and just gave the plaintiff one opportunity to amend with only one product. So actually, the with prejudice part already applied during the motion to strike phase because some of the allegations brought, most of the allegations brought by the plaintiff, lacked any factual basis whatsoever. Failed to accomplish notice function. Yes, Your Honor, the district court then came and dismissed the entire case with prejudice, in part based on this issue of the lack of technical basis in infringement contentions, but also, in part, based on the conduct. And the district court actually noted, but not in the fees order, but in the context of the order dismissing the case with prejudice, and here's another instance where we think there might be an error. The district court noted that as of August 2013, in a footnote, that Plaintiff Blue Spike could have dismissed the case then. That they admitted they were on notice of the weakness of their case at that point, but they chose not to. Yet that fact did not reemerge in the fees order. There's yet another instance of misconduct that was on the Plaintiff Blue Spike's part that we don't see the district court analyzing here. So what's your argument that the order itself is scant? It's not detailed enough? Our argument is that when you look at the fees order, it seems to have missed the most important issue in the case, and that's the inadequate pre-filing investigation here. That's borne out in the infringement contentions that were struck by the court. But when we get to the fees order, there was no discussion at all about the weak technical case that was brought by the plaintiff. Okay. So what you find missing here is a technical discussion by the district court. Yes, Your Honor. I would phrase it as Octane Fitness phrased it, which is an analysis of the strength of the case. She does cite Octane. Yes, Your Honor. The district court cites Octane. Yes, Your Honor. So your problem is that her analysis is scant. It's not detailed enough. You want more. Your Honor, I wouldn't necessarily say we want more, that that's the definition of what we're seeking. I think what's missing once more is an analysis of the central, most critical issue that drove resolution to the case and the fact that that is an inadequate pre-filing investigation. Is it your argument that she missed that analysis because she applied the wrong standard? Your Honor, we did make that argument in our opening appellate brief that in looking at her fees order, it appeared she did a Brooks Furniture type analysis, a very rigid, is there an objective baselessness to the infringement claim. But I think with the guidance that this court has also offered now in Rothschild, in the Justicam, and yet again in the new Octane Fitness appeal, the district court unfortunately in 2015 didn't have the benefit of that analysis. But she didn't do Brooks Furniture. What she said was, you asked me to dismiss the case because allegations on their face were inadequate, period. Yes. And now you're saying I should go back and do all of this detailed technical analysis about what the case might have been like had they really been able to go forward with the case, had we gone forward. And her point was, I can't do that. I can't. You asked me to dismiss it because on its face the allegations were inadequate. So I can't really go back and say for sure that they could have never had any ability to assert an infringement if they had pled better. And that's pretty much what you're asking her to do. That's like asking her to do the whole case when you asked her to get rid of the case up front. Your Honor, we don't believe she had to go back and do any technical analysis. It had all been already done by the magistrate court. The findings were all already in the court's order striking the infringement contentions. The district court, in the context of the fees motion, did not have to go back. And, in fact, we thought it was error on the court's part to say we had to go back and look at whether the products may infringe or not. That's not the exercise. Judgment had already been entered. A finding had already been found that the infringement contentions were dismissed with prejudice. There was no re-technical analysis that had to be done. But when you look at the totality of the circumstances under Octane, that has to be weighed, and that's part of the substantive strength of the party's case. That's missing in here. In fact, when the court says, is there a colorable basis for infringement, and asking do the accused products infringe or not, there's actually three layers of error there. First of all, there was no concession on our part that there was any infringement by any of the products. Why didn't you ask for limited discovery on that issue? On which issue, Your Honor? On the ownership of the technology. Well, we were the accused infringer. I know, but you're saying that during the case you were arguing that you didn't own the technology that somebody else did. Yes, Your Honor. Why didn't you ask for limited discovery in order to settle that particular question? Your Honor, we actually believe it's a plaintiff's obligation as part of their pre-filing investigation to figure out which party they are to sue. But indeed, Blue Spike actually sued. That may be true, but you can force the issue, and you didn't force the issue. Shouldn't some of the delay be attributed to your failure to try to resolve that particular issue that would have been dispositive? Your Honor, the opportunities we had to present evidence were limited actually by the history of this case, but we did at every opportunity. For example, in the context of our transfer motion, we submitted a declaration from the person most knowledgeable at Adobe who previously worked at Autitude and provided that information about different lines of product, some going to Yahoo. But as the case transferred to California, the district court there was very clear that no discovery will occur until there's sufficient infringement contentions. So we actually followed those courts' rules. Didn't you admit that there was servicing of Autitude legacy customers? I mean, wouldn't that admission alone have led to some ability to assert infringement? Your Honor, no. Actually, it does not provide a basis for infringement assertions because we've seen the totality of their technical evidence about how any product they believe reads onto the claims, and we have exhibits that don't refer to products. We have exhibits, as the magistrate court found, that don't even inform on the limitations found in every claim. It doesn't actually matter what products Blue Spike ultimately tried to accuse, and they moved that target throughout the case. There was never a sufficient basis on a technical level to show patent infringement. And you think it was the trial court's job, after having dismissed the case, to analyze all of that technical data? No, Your Honor. We think the trial court's judge should go back and take what the magistrate court had done and factor that into the fees analysis. We think that's missing from the fees order. If I could reserve my time for any time for rebuttal. We will do that, Mr. Maher. Mr. Gartheiser? May it please the Court. Randall Gartheiser on behalf of Gartheiser, honing myself as an attorney that was accused of this misconduct as well, and they're seeking jointly attorney's fees, not just from Blue Spike, but myself and my colleague. And we appreciate the opportunity to be heard on this issue. I'd like to start off with just basically saying there's three main points here I want to make. The court did punish Blue Spike. Second, the Honorable Yvonne Gonzalez-Rogers did apply octane fitness. And third, Adobe had plenty of opportunities to address Blue Spike's alleged shortcomings and decided not to. How do we know, Counselor, that the district court applied octane fitness if the order does not discuss, for example, some of the things that were discussed by the magistrate judge? Your Honor, I think that's a great point. And the way you know that is because of the evidence before the judge. The defendants in this case submitted 35 exhibits. Some of those are in- So I counted 12 different instances that really stood out in my mind in terms of litigation conduct and things of that nature, something that could plausibly fall under octane. And I don't see that the district court addressed any of those other than maybe in passing. One of the things the magistrate judge did not have at her- that she did not know at the time but the district court judge later did know is that we were trying to work with Adobe to address their concerns. We had worked with Google, another transfer case, to do the same thing. And we had been able to work it out. And what happened was with Adobe- The record shows that Adobe was contacting you and bringing up this issue with respect to ownership of the technology. And you weren't even responding to those calls. You know, again, that's not accurate. And I was on those calls. We wanted to see the agreement between Adobe and Yahoo where they sold this technology. They said they didn't have any more. They sold it to Yahoo. We had settled with Yahoo. And I actually put them in contact with Yahoo's in-house counsel and said, Look, guys, they're not saying to these folks- They're not saying the same thing. Adobe, you're telling me that we should look to Yahoo. And that's just not the case. I mean, Yahoo's saying that they have nothing to do with that. Why don't you just show us the agreement so we can- You know, you can redact it. We just want to see it so that we can make our own determination because people disagree about agreements. You're talking about an exceptional case here, attorney fees. The court itself talked about bad faith, extending, multiplying litigation unnecessarily, and use of gamesmanship. She laid out all these instances justifying fees, but then she found no fees. And I think part of that is because at the end she looked at all the totality and understood that based on the correspondence that we presented to her as well, that we tried to- She mentioned one thing that made a colorable justification for infringement, the auditude customs. Yes, sir. That's all she mentioned. It was the whole auditude time frame there. It was two years that they had the accused technology. And again, if we could have just- And all we asked was to see the documentation that supported this attorney argument that we gave it away, we don't have it anymore. And what really started to push the issue of removing- What you were arguing is that you wanted to see the source codes. Well, before that we wanted to just see the agreement. Like two years before that, two years into it they told us they didn't even have the source code. That would have been nice to know two years before. But two years before we just wanted to see the agreement where they say that Adobe sold it to Yahoo and we don't have it anymore. Now, I know in some of these declarations it's like, well, I thought auditude sent some of it into now. It's very confusing. And we just asked them to give us a look at that document because Yahoo's in-house counsel isn't saying the same thing. And we had just resolved the case with them so we didn't want to save third-party discovery on them. Your friend on the other side said the court entered an order saying there would be no discovery until the adequacy of the pleadings was sorted out. Was that by request of Adobe or was that by your request or was that sua sponte? That was at the request of Adobe at the hearing. What they did is they ran to the court on this infringement contention. While we were trying to work them out with Google, they just went and moved on us saying they were inadequate. We had already reduced the number of claims. We had reduced the number of products down to one. We had 42 claims at the time. It was five patents. And so we were already narrowing it down like they wanted us to. Do you have any authority for the proposition that if the court enters an interim sanction, whether it be for discovery, abuses, or a sanction like this, that that should be factored into the 285 analysis? As you indicated yourself earlier, I know that the court did that, and I think the authority would be octane fitness under the totality of the circumstances. She also did it with prejudice. That was a big deal. She also simultaneously in the other case that she mentioned, she invalidated all the patents because they were all the patent claims. Counselor, to what extent does 285 encompass sanctions other than attorney's fees? I think, again, it's under the application of the octane fitness where you look at the totality of the circumstances, and any punishment is relevant. Octane fitness applies to 285, Section 285, and that goes to attorney's fees, correct? It was also a 297 claim here as well, so I want to just make that point known. I'm sorry, I need you to repeat the question. I don't know if I answered it. No, you haven't. But I believe under the totality of the circumstances, that's how you would apply this. So would the fact of a different sanction be factored into the question of exceptionality or would it be factored into the question of the size of the fee award? She found that that was the appropriate remedy in this case. Sue Esponte moved with prejudice to dismiss not only our claims, but also then granted them to the prevailing party. We paid them $7,282 in costs, and we didn't argue about them. We just paid them. Costs are not a sanction. They can be, Your Honor. I mean, I understand what you're saying, but the conduct and the strong wording ultimately, there wasn't a lot of backing up of some of the things that the defendants were saying. She says in her order itself that there was more attorney argument, and she had all the settlements, this talk about there were nuisance values. None of that was corroborated by the evidence. None of it was even provided to you to look at. And she even cited in the order itself that it's reviewed for abuse of discretion when she was coming up with her ruling. And I also just want to point out real quick that she took into account specific information that was part of her record at Appendix 1368, 1371, 1378, and 1401. That first one was 1368. And so with respect to some of the things that were said by opposing counsel here, is that there was no evidence. Again, I disagree. I signed that complaint, and I know what was in it. And if they had a problem with it, they could have moved under 12b-6. They chose not to. Why did you assert 100 claims, and then later on, if you signed the complaint, and I guess that what you're saying is that you certified S.U.S. accurateness, et cetera, then why was there such a sharp reduction in the number of claims that are being asserted? There is always a natural funneling or distilling of the claims in a case. I will say that I've learned from this, and we now try to start off around 42. But that's the case. And in patent cases, if there's just natural funneling of the claims that are in controversy? Absolutely, Your Honor. In fact, some courts kind of have a local rule that require you to do such funneling. And just realistically, presenting the evidence to a jury, you only need about four or five claims when you're done, when you get there. Otherwise, it gets boring. A hundred would be too many for a jury. It could be, but I would think so, yes, sir. Why did you assert 100, then? Well, in the complaint, we asserted the claims of five patents, and then later, when we started to get into the infringement contingents and saw how they were using their product and their advertising services to help identify and then pick the ad, that's how we ended up having more broader claims. Because at the time, there were four accused products as well. Did you ever seek to amend your complaint to specifically allege infringement based on the servicing of the legacy Autotune customers? We were in the process of getting ready to do that. When everything went sideways with the Google, her ruling in the Companion case with Google that all the claims were invalid of that particular assert against that defendant, there were 30 or 40 claims there. And so at that point, we decided that it was probably best. Well, actually, before that, we decided once we had the ruling at the magistrate level, and she said that we're not going to be able to meet the standard of ND Cal, and they did not move to challenge our infringement contentions in ED Texas. And I liked our infringement contentions, but again, they didn't even put them in the record for you to even look at to make your own decision. Instead, they want to sit up here and say that they're bad and not allow you to make that decision on your own. The court had them, though. They were an exhibit that Judge Gonzales-Rogers had and did consider, along with the pages that I pointed out just now, and also the fact that some of the things in the transcript made by the magistrate judge wasn't exactly accurate. Some of the exhibits that were included, such as Appendix 1372, 1371, 1378, it just talks about how Adobe is committed to attitude product lines. Adobe is very committed to attitude product lines and will continue to invest both in care and management as well as creating end-to-end solutions. So Adobe, this has got their emblem on it everywhere. It looks like 84-32 at the top. It was part of their extensive exhibits that they gave to the court for their attorney's fees. And again, earlier on, they could have moved for 12b-6. They didn't. They just filed an answer. They could have moved for a directed verdict, 12c. They didn't. They just didn't. And then they could have moved for Rule 11 sanctions. They said a letter, and they put it at the end, and they said, if you really think that we haven't met our burden, do it. Send us the right thing at the safe harbor. They didn't. And then they wanted a motion to transfer, and then it was just like, ah-ha. And then they told us we didn't have any source code. We don't have to help to know. And they did have some discovery obligations earlier. Judge O'Malley asked me about, you know, well, didn't they say, well, once it started to come out that they may have not kept them, and that's some of the things I mentioned to you here, it came out that they didn't have the source code anymore. We asked them, well, when did you lose it, or when did you not have it? Because you had it at one point because you sold it to Yahoo. That's what you're telling us now. And the case started in 2012. And so we asked just a simple declaration from the IT guy that says that to kind of back up the attorney argument. We couldn't get that. So those are just simple things. If they would have just given it to us, then we could have walked away. The agreement with Yahoo, for example. We just wanted to verify what they were saying. You know, trust but verify. And we could never get that collaboration. And I think that shows in some of the correspondence that the court had in that I wrote to opposing counsel. Again, the third point there was that there are plenty of opportunities. I mentioned a couple there already. And it wasn't... Anything further, counsel? Your time is about to conclude. I appreciate it, Judge Lloyd. Nothing at this time. If you have any questions, we might be happy to answer them. Thank you. Thank you, Mr. Kautoyz. And Mr. Maher has almost two minutes. Your Honor, the vast majority of what we just heard from Blue Spike is finger-pointing at Adobe. But we don't have an explanation from them on how they had a basis to file suit in the first place. The only thing Blue Spike pointed out, they said 1368, 1371, 1378. Those are all exhibits the magistrate court reviewed and determined not to even provide notice of how the claims are infringed. But did the district court abuse her discretion? Absolutely, Your Honor. We believe the district court did in the context of the fees order. Now, Plaintiff Blue Spike does not want to offer any discretion to and deference to the magistrate court because all those findings are against them. But in the fees context, they said, oh, we have to defer. But, yes, there's abuse here. But you say there was no basis to sue in the first place. You didn't file a motion to dismiss. You didn't attack the complaint. It wasn't until you got to the Northern District of California where the rules are very strict that you started to hammer on the issue of infringement contentions, right? So it's not the face of the complaint that was the problem, apparently, in your mind. Your Honor, I have to respectfully disagree. We sent a letter to Blue Spike as soon as we got their infringement contentions in Texas, pointing out all the technical deficiencies, showing that they had no evidence that we performed any comparing of what's known as an abstract to anything in the database. When you say you disagree with me, you did not move to dismiss the complaint. We did not move to dismiss the complaint, yes, Your Honor. We had clues from the complaint that suggested that there were deficiencies because they described their patents as being about fingerprinting, yet all their accused products, all four of them, were advertising products. But until we saw the infringement contentions for the first time in February 2014, we didn't see the weakness, the lack of technical basis. And as soon as we saw that, we gave notice in April, we gave notice in May, we gave notice again in October. Did you provide them with the documentation of the transfer of the technology? Yes, Your Honor, in the form of the declaration from Mr. Alfand, we certainly did. But as to who owns the products and what products should actually be accused... But you didn't provide them with the agreement when they asked for it. No, Your Honor, Discovery was not open at that point, so we did not provide the agreement. But you were the one who asked to stay Discovery. We asked to stay Discovery, yes, in the context of under the Northern District when we moved to strike the infringement contentions. But the actual court guidance on the fact that you can't get source code Discovery, for instance, that was sous-fante from the district court. Forget the source code. What about just the agreement that shows that the technology was transferred? We did not provide that to them, Your Honor, but that's actually not the reason they lost the case. The reason they lost the case is they have no technical evidence. They can't show you where the abstract is in our products. They can't show you how the abstract is compared to anything in the database. None of the exhibits that you just cited, 1368, 1372, 1378, will give you a single clue how that's done or whether even those steps are performed. And that's what the magistrate court found. Your Honor, I see I'm out of time, so unless there's another question... Thank you, counsel. We'll take the case under revising. Great. Thank you, Your Honor.